**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 31 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| INTEGRA MED ANALYTICS LLC, Relator, <br><br> Plaintiff-Appellee, <br><br> and <br><br> UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PROVIDENCE HEALTH & SERVICES; et al., <br><br> Defendants-Appellants. | No. 19-56367 <br><br> D.C. No. 2:17-cv-01694-PSG-SS <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted February 12, 2021
Pasadena, California

Before: BOGGS,[**] M. SMITH, and MURGUIA, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Relator Integra Med Analytics, LLC, claims that Providence Health & Services, its affiliated hospitals, and J.A. Thomas & Associates, Inc. (JATA), violated the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733. Integra alleges that Providence submitted claims to Medicare that it coded for more lucrative secondary diagnoses that were not supported by patients' conditions. Integra based its complaint primarily on a statistical analysis of Medicare-claims data that demonstrated Providence submitted proportionally more claims with higher-paying diagnosis codes than comparable institutions.

Providence and JATA filed motions to dismiss before the district court. The court granted their motions in part and denied them in part, allowing Integra's primary FCA claim to proceed. At Defendants' request, the district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). Its certification was based on two controlling questions of law for which there was substantial ground for difference of opinion: (1) Did Integra adequately plead the falsity of Providence's Medicare claims?; and (2) Is all online information material that is "from the news media" for the purpose of the FCA's public-disclosure bar?

We have jurisdiction under 28 U.S.C. § 1292(b). We hold that Integra failed to state a plausible claim for relief because its allegations do not eliminate an obvious alternative explanation—that Providence, with JATA's assistance, was more effective at properly coding for better Medicare reimbursement than others in the

healthcare industry. Accordingly, we reverse the district court's order denying Defendants' motions to dismiss, and we remand.[1]

## I. BACKGROUND

We take the following facts from the complaint as true for the purpose of reviewing a motion to dismiss. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019).

Providence is "one of the nation's largest health systems, operating 34 hospitals and 600 clinics across five states." A significant portion of Providence's revenue comes from Medicare reimbursements.

Medicare reimburses hospitals on a per-discharge basis, meaning a payment for each time a patient stays at the hospital. The payment amount depends largely on the patient's "diagnosis related group" (DRG). Three types of codes contribute to the DRG: (1) A principal-diagnosis code, (2) surgical-procedure codes, and (3) secondary-diagnosis codes. There can be multiple secondary-diagnosis codes, which together represent "all conditions that coexist at the time of admission, that develop subsequently, or that affect the treatment received [or] the length of stay." Secondary-diagnosis codes can modify the base DRG's severity level to one of three levels: (1) Without complication or major complication, (2) complication or

---

[1] Because Integra did not adequately allege that Providence submitted false claims, we do not address whether the public-disclosure bar applies.

3

comorbidity (CC), and (3) major complication or comorbidity (MCC). The inclusion of a CC or MCC code can significantly increase the amount of reimbursement that the hospital receives from Medicare.

Providence, like many other hospitals, has a "clinical documentation improvement" (CDI) program that translates clinical language used by medical-treatment providers to Medicare codes. Providence retained JATA to assist its CDI program. JATA offers consulting services to healthcare providers through products and services intended to improve how they document patients' treatments.

JATA worked with Providence to train doctors to describe medical conditions that would support coding for higher-paying diagnoses. For example, JATA provided doctors "Documentation Tips" suggesting specific language conducive to coding CCs and MCCs; for example, specifying the type and degree of malnutrition. It also trained Providence CDI specialists to send allegedly "leading queries" to doctors that were designed to change their initial assessments in a way that would justify coding a CC or MCC.[2] Integra alleged that this pressure "would sometimes result in the creation of contradictory medical records," such as an initial documentation of "delirium" with the later addition of "encephalopathy  These

---

[2] The complaint does not provide examples of leading queries used at Providence but claims it is "consistent with JATA's practice at other hospital systems."

queries were designed to stop short of telling doctors *exactly* how to document their care because that would constitute a "noncompliant" leading inquiry.

Integra, a data-analytics company, commenced this suit after its analysis of data received from the Centers for Medicare and Medicaid Services (CMS) demonstrated that Providence submitted claims coded with a higher rate of MCCs than other comparable institutions. Integra is not affiliated with Providence or JATA and did not rely on insider information such as confidential patient medical records. Instead, Integra's supported its complaint primarily through a "proprietary statistical analysis" of the CMS data.

Integra's methodology involved comparing the rate at which Providence coded higher-paying secondary diagnoses in connection with particular principal diagnoses with the rates coded by other institutions. It labeled claims as false if they were coded with an MCC at "more than twice the national rate or were used at a rate three percentage points higher than in the other hospitals." Thus if the national rate of an MCC code accompanying a specific principal diagnosis was .1% but Providence coded it .2% of the time, or if the national rate was 55% and Providence's rate was 59%, Integra would label the claims as false.

Integra's second amended complaint focuses on claims submitted between 2011 and 2017 involving three categories of secondary MCC codes: Encephalopathy, respiratory failure, and severe malnutrition. Integra refers to these

three MCCs as "misstated MCCs." Providence used at least one of these three misstated MCCs on approximately 17 percent of its Medicare claims as opposed to a 10 percent usage rate at non-Providence institutions—1.7 times as often. Integra asserts that its analysis controlled for inter-hospital variation caused by different characteristics in patient populations, "such as age, gender, and race, as well as county demographic factors such as the unemployment rate, median income, and urban-rural differences." Its analysis also found that "there was less than a one-thousandth percent chance" that Providence's greater rate of coding of these MCCs was "due to chance."[3] (Second amended complaint, ¶ 51.)

The complaint's supporting graphs also demonstrate that there was a steadily increasing trend in coding rates for the three allegedly misstated MCCs from 2011 to 2017 at comparable healthcare institutions. By 2017, non-Providence entities generally coded claims with encephalopathy, respiratory failure, and severe malnutrition at similar rates to Providence's in 2011 or 2012. Providence also showed a significant increase in coding MCCs after it hired JATA to assist with claim documentation.

---

[3] We note, however, that the complaint states later that Integra "only considered claim groupings where there was less than a one-in-a-thousand chance that the difference in major complication rate at Providence versus other hospitals was due to random causes." (Second amended complaint, ¶ 125.)

## II. ANALYSIS

We review de novo a motion to dismiss a claim under the FCA. *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 898 (9th Cir. 2017). The "essential elements" of an FCA claim are: "(1) [A] false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Campie*, 862 F.3d at 899 (quoting *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006)). On appeal, Defendants contest only the first element, that Integra has adequately pleaded false or fraudulent conduct.

As with all fraud allegations, FCA claims must comply with Federal Rules of Civil Procedure 8(a) and 9(b). *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Rule 8(a) requires the pleading contain a plausible claim for relief, and Rule 9(b) imposes a heightened requirement of particularity. *Ibid.* Integra's complaint fails to meet the Rule 8 standard.

Rule 8 requires "a plausible claim for relief" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). At this stage, we "accept as true all of the allegations contained in a complaint" but not the truth of "legal conclusions." *Id.* at 678. In evaluating plausibility, "courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 682).

An allegation merely consistent with a defendant's liability gets "the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Integra argues that the existence of an alternative inference does not defeat a plaintiff's claim at the pleading stage. It relies on our statement in *Starr v. Baca*:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible.

652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis and word break in original). But the *Starr* court expressly relied on factual allegations that did not support an "'obvious alternative explanation,' within the meaning of *Iqbal*." *Ibid.* (quoting *Iqbal*, 556 U.S. at 682); *see also Eclectic Props. E.*, 751 F.3d at 996–97 (discussing the above quote from *Starr* and requiring "[s]omething more . . . , such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible" (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013))).

Here, we accept the following factual allegations: Providence submitted Medicare claims with secondary MCCs—such as encephalopathy, respiratory failure, and severe malnutrition—at a higher rate than most other comparable

8

institutions; this increased rate was not the result of chance or variations in patient populations; and Providence's CDI specialists and JATA staff incentivized doctors to use language conducive to coding higher-paying secondary diagnoses through their documentation tips and queries. But we need not—and cannot—accept the conclusion that these allegations resulted from fraud or that doctors recorded unsupported medical conditions.

Integra does not rule out an obvious alternative explanation, that Providence, with JATA's assistance, was simply ahead of others in its industry. This situation is unlike the competing inferences in *Starr*, "both of which [were] plausible." 652 F.3d at 1216. Integra offers only a *possible* explanation—that doctors lied about underlying medical conditions—to explain a statistical trend that is consistent with a plausible alternative (and legal) explanation.[4] It is reasonable that Providence, one of the largest healthcare systems in the country, which specifically hired consultants to improve its Medicare billing, would be at the forefront of a national trend toward coding these relevant MCCs at a higher rate. We need not accept the conclusion that the defendant engaged in unlawful conduct when its actions are in line with lawful "rational and competitive business strategy." *Twombly*, 550 U.S. at 554. Therefore,

---

[4] CMS has acknowledged that there is nothing "inappropriate, unethical or otherwise wrong with hospitals taking full advantage of coding opportunities to maximize Medicare payment that is supported by documentation in the medical record." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2008 Rates, 72 Fed. Reg. 47,130, 47,180 (Aug. 22, 2007).

Integra does not state a plausible claim for relief, and its complaint must be dismissed.[5]

### III. CONCLUSION

Accordingly, we REVERSE the district court's denial of the motion to dismiss and REMAND with instructions to DISMISS the complaint.

---

[5] We note that this conclusion does not categorically preclude statistical data from being used to meet Rule 8(a)'s pleading requirement and, when paired with particular details of a false claim, Rule 9(b).